IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

BENJAMIN P. WILKINSON,

    Plaintiff,

V.                                          CIVIL ACTION NO. 3:06-0464

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

## MEMORANDUM ORDER

      In this action, filed under the provisions of 42 U.S.C. § 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his applications for supplemental security income based on disability, both as a child and as an adult. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

      Plaintiff filed his applications on November 25, 2002 and November 6, 2003, alleging disability as a consequence of left arm brachial plexis injury and paralysis. On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled, either as a child or an adult, in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

      At the time of the administrative decision, plaintiff was nineteen years old and a high school senior. The administrative law judge found that plaintiff suffers from "left brachial plexus injury with total paralysis of the left upper extremity," an impairment he considered severe. Concluding

that, prior to becoming an adult, plaintiff did not have a combination of medically determinable physical or mental impairments that met, medically equaled or functionally equaled the severity of the listings,[1] the administrative law judge found him not disabled. Concluding that, as an adult, plaintiff retained the residual functional capacity for a limited range of sedentary level work, and relying on Rule 201.24 of the medical-vocational guidelines[2] and the testimony of a vocational expert, the administrative law judge again found him not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. Plaintiff's most significant impairment is his inability to use his left upper extremity due to an injury sustained while riding an all-terrain vehicle in December 2001. At the hearing he testified that he was also in some special education classes in school and had done better since being switched to them.

In terms of physical residual functional capacity, the administrative law judge found, as an adult, plaintiff was limited to sedentary level work not requiring the use of the non-dominant left arm. He could never crawl, climb ladders, ropes or scaffolds, or be exposed to extreme cold or any hazards. He could only occasionally balance, stoop, kneel or crouch. Prior to age eighteen, the administrative law judge found that plaintiff had no limitation in the domains of acquiring and using information, attending and completing tasks, interacting and relating to others, and caring for oneself. He did assess a marked limitation in the domain of moving about and manipulating objects due to the left arm problems. It does not appear plaintiff objects to these findings, and the Court finds they are supported by substantial evidence.

---

[1] 20 C.F.R. § 416.924(d).

[2] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1.

Plaintiff does assert that the administrative law judge's findings reflect inadequate consideration of the degree of mental impairment he experienced. The evidence shows that plaintiff was apparently placed in special education classes in 1999, and I.Q. testing at that time placed him in the borderline range. In April 2002, Tom Harmon, plaintiff's special education teacher, completed an "Educational Evaluation" form which reflects his observations that plaintiff was cooperative, could independently complete work in a timely manner and had strengths in word recognition and comprehension and a weakness in written expression.

A similar form completed by Connie McSweeney, plaintiff's teacher in regular classes, reflects that he was "usually" cooperative and seemed capable of doing the work assigned but sometimes chose not to finish his work or turn it in on time because he was tired or for some other reason. He worked well with other classmates and usually displayed a good attitude.

An October 18, 2002 "Report of Psychological Evaluation" performed for the Wayne County Special Education Department by Phawn Cusick, M.A., reflects that plaintiff was cooperative and attentive during testing and achieved I.Q. scores which were considerably higher than in 1999 when he was classified as having a "mild mental impairment." Ms. Cusick pointed out several reasons why the 1999 scores may have been a "significant underestimate" of his actual functioning levels and considered his 2002 scores a more valid estimate of his actual functioning. Due to his inability to use the left hand and arm during testing, she expressed the opinion that plaintiff's low average performance I.Q. score of 85 might actually have been an underestimate of nonverbal abilities. One area of weakness noted was plaintiff's visual processing speed which was considered to be in the borderline range.

On January 2, 2003, Mr. Harmon completed a "Teachers Questionnaire" wherein he assessed the degree of limitation he believed plaintiff had in the various domains used by the administrative law judge to assess childhood functioning. In the domain of acquiring and using information, he assessed a "serious problem" with expressing ideas in written form and "obvious problem" in the areas of reading and/or comprehending material, learning new material, recalling and applying previously learned material and applying problem solving skills in class discussions. With regard to attending and completing tasks, Mr. Harmon felt plaintiff had "obvious" problems with focusing long enough to finish an assigned activity or task, refocusing to task when necessary, and organizing his own things or school materials. He did not think plaintiff had any problems in the areas of interacting and relating with others or caring for himself, but in the domain of moving about and manipulating objects, he noted "serious" problems with plaintiff moving his body from one place to another and moving and manipulating things and "obvious" difficulty with a couple other areas.

"Childhood Disability Evaluation Forms" were completed by Dr. Roman and Dr. Lauderman, both state agency medical advisors, and reflect findings of "less than marked" limitation by Dr. Roman and no limitation by Dr. Lauderman in the acquiring and using information domain and no limitation of attending and completing tasks, interacting and relating with others and caring for oneself. Dr. Roman found less than marked limitation in moving about and manipulating objects while Dr. Lauderman found marked limitation in this domain. The administrative law judge determined, consistent with these evaluations, that plaintiff had no limitation in any domain but that of moving about and manipulating objects, which, as noted, he found markedly limited. His reasoning for finding no limitation in the acquiring and using information domain was that plaintiff's most recent I.Q. testing revealed average to low average scores, and Mr. Harmon reported plaintiff

4

performed well in the special education setting. It is apparent that the administrative law judge considered the findings of Mr. Harmon but agreed with Dr. Lauderman that the 2002 evidence relative to his intellectual functioning did not establish any limitation in this regard. The Court concludes that the evidence provides substantial support for this determination. Even if the administrative law judge had adopted Dr. Roman's finding of less than marked limitation in this domain, it would have had no effect on the ultimate conclusion that plaintiff did not have an impairment or combination of impairments which met, medically equaled or functionally equaled a listed impairment prior to age eighteen.[3]

Plaintiff also objects to the administrative law judge's failure to find he had any mental impairment as an adult. The administrative law judge noted, however, that plaintiff was taking some special education classes where he was receiving one-on-one tutoring, and he considered his education limited,[4] even though plaintiff testified he was about to graduate from high school at the time of the hearing. Further, the vocational expert testified only about unskilled jobs consistent with the limited education description. Given the most recent I.Q. testing and observations during psychological evaluation, the Court concludes no additional findings were necessary, and the administrative law judge's residual functional capacity assessment is supported by substantial evidence.

---

[3]See, 20 C.F.R. § 416.924. Plaintiff would have had to have marked limitation in two domains or extreme limitation in one domain to functionally equal a listed impairment. 20 C.F.R. § 416.926a(a).

[4]Education is considered "limited" when it is seventh through eleventh grades, and ability in reasoning, arithmetic and language is not great enough to allow a person to do most of the more complex job duties needed in semi-skilled or skilled jobs. 20 C.F.R. § 416.964(b)(3).

Finally, it is noted that the jobs the vocational expert cited were non-emergency dispatcher, surveillance system monitor and night watchman. Plaintiff asserts that this testimony and the administrative law judge's reliance on it are somehow flawed because all gate guard and security guard positions are classified in the Dictionary of Occupational Titles ("DOT") as semi-skilled rather than unskilled. It is unclear whether this argument applies just to the night watchman positions or also to the surveillance system monitor jobs as well. Even assuming that plaintiff's argument is accurate as to the night watchman jobs, the non-emergency dispatcher position has not been challenged, and the Commissioner offers a credible argument that there is indeed a surveillance system monitor job that is sedentary level and unskilled. See, DOT #379.367-010. According to 20 C.F.R. § 416.966(b), the Commissioner need only show that "there is a significant number of jobs (in one or more occupations)" which plaintiff can perform given his particular limitations and abilities. Clearly he has done that here, and plaintiff's argument to the contrary is unpersuasive.

On the basis of the foregoing, it is **ORDERED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted, and the decision of the Commissioner affirmed. All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.

ENTER: May 12, 2009

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE